## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KANWAL NADEEM, )
)
                Plaintiff, )    Case No. 19-cv-08253
)
      v. )
)
VISCOSITY OIL COMPANY, )    Judge John Robert Blakey
)
             Defendant. )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kanwal Nadeem sues her former employer, Defendant Viscosity Oil Company ("Viscosity"), alleging that Viscosity: (1) willfully violated the Equal Pay Act of 1963, 29 U.S.C. §206(d) (count I); (2) discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e–2000e-17 (count II); and (3) retaliated against her for complaining about the discrimination, also in violation of Title VII (count III). [29]. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and alternatively moves to strike certain paragraphs of the complaint pursuant to Federal Rule of Civil Procedure 12(f)(2). [33]. For the reasons explained below, this Court grants in part and denies in part Defendant's motion.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

Viscosity Oil Company, located in Willowbrook, Illinois, is a subsidiary of Petronas Lubricants International, a corporation owned by the Malaysian government. [29] at ¶ 7. Viscosity hired Plaintiff—a female—to work as a financial analyst in January 2015. *Id.* at ¶¶ 6, 8. From the outset, Plaintiff fulfilled the duties of her job title, but also performed the duties of the Senior Financial Analyst position because that position with Viscosity remained otherwise vacant. *Id.* at ¶ 10. In the first quarter of 2016, after roughly one year of working under the title of Financial Analyst at Viscosity, Plaintiff informed her supervisor, Luis Jimenez, that she was interested in assuming the vacant Senior Financial Analyst position. *Id.* Jimenez informed Plaintiff that he "was working on it" and promised her the promotion. *Id.* at ¶ 11. Meanwhile, Plaintiff continued to perform Senior Financial Analyst duties, in addition to her assigned duties as a Financial Analyst. *Id.* at ¶ 12.

In late 2016, after seeing a posting for the Senior Financial Analyst job on LinkedIn, Plaintiff reiterated to Jimenez that she wanted the job; Jimenez told her the LinkedIn post was a mistake, and Viscosity removed the posting after Plaintiff's conversation with Jimenez. *Id.* at ¶¶ 13–14. Thereafter, Plaintiff continued to fulfill the duties of both her position and of the Senior Financial Analyst position. *Id.* at ¶ 15.

---

[1] This Court takes these facts from Plaintiff's First Amended Complaint ("FAC"), [29], as well as documents attached to it. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In April of 2017, Viscosity hired Roman Duda, a male, for the Senior Financial Analyst job. *Id.* Viscosity hired Duda as a "Financial Analyst," though he was hired to perform Senior Financial Analyst functions. *Id.* at ¶¶ 16, 25. Viscosity did not consider Plaintiff for the role, even though Plaintiff expressed interest in the position and performed the duties of the position, and even though Jimenez previously promised her the position. *Id.* at ¶¶ 15, 17. Plaintiff trained Duda, and she also continued to perform many aspects of his job, as he frequently took personal time during critical periods in the billing cycle, leaving Plaintiff to manage her role, as well as his role, to meet looming budget deadlines. *Id.* at ¶¶ 18, 19. Plaintiff's workload continued to increase throughout 2018, as she continued to do both jobs. *Id.* at ¶ 20. Viscosity granted Plaintiff a 1% raise in March 2018 for her efforts. *Id.* at ¶ 21. Jimenez told Plaintiff the 1% increase was "the best he could do." *Id.*

In the summer of 2018, Plaintiff met with Tatiana Villefort, the Human Resources manager for Viscosity's parent company, Petronas. *Id.* at ¶ 22. Plaintiff told Villefort that she believed Viscosity discriminated against women. *Id.* at ¶ 23. Specifically, Plaintiff told Villefort that she believed Viscosity had "strung her along" in her position with the promise of career advancement. *Id.* Plaintiff told Villefort that she performed many of Duda's job functions in addition to her own responsibilities at Viscosity, and the extra work led to long hours and caused significant stress. *Id.*

In early August 2018, Duda directly informed Plaintiff that he was resigning, effective the next month. *Id.* at ¶¶ 24, 30. During that conversation, Duda told

Plaintiff his salary, told Plaintiff he believed Jimenez knew Plaintiff wanted his job, and indicated that Jimenez told Duda not to call himself a "Senior" Financial Analyst because it would rankle Plaintiff. *Id.* at ¶¶ 25–26, 27. Jimenez never mentioned Duda's resignation to Plaintiff, generally seemed secretive about Duda's departure, and never raised the possibility of promoting Plaintiff into Duda's position. *Id.* at ¶¶ 29, 30. For her part, Plaintiff also failed to raise the issue with Jimenez, as she was concerned about creating unnecessary backlash for Duda. *Id.* at ¶ 30. Plaintiff continued to perform the work of both her position and the Senior Financial Analyst position until August 28, 2018, when she notified Defendant she planned to resign effective September 7, 2018. *Id.* at ¶¶ 29, 31, 32; [29-1].

On December 17, 2018 Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [29-1]. In her charge, she alleged that Viscosity discriminated against her on the basis of sex and paid her less in violation of the Equal Pay Act. *Id.* More specifically, she alleged that, during her employment from January 2015 to September 2018, she performed her job duties as well as a lot of the job duties for the Senior Financial Analyst position, that she expressed interest in the latter open position, that Viscosity hired a man to do the job instead, that she had to train that man and continue to perform a lot of his job duties, that Viscosity failed to promote her and paid her less because she is a woman, and that she was constructively discharged on September 7, 2018. *Id.* The EEOC issued Plaintiff a Notice of Right to Sue on September 17, 2019. [29-2]. Plaintiff initiated this lawsuit on December 17, 2019, claiming violation of the Equal Pay Act (count I);

4

sex discrimination in violation of Title VII (count II), and retaliation in violation of Title VII (count III). *See* [1]; [29]. Defendant moves to dismiss all three claims and also moves to strike certain allegations based upon timeliness and non-exhaustion. [33].

## II.    LEGAL STANDARDS

Defendant moves to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Plaintiff need not plead "detailed factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded

5

facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018). The Court need not accept statements of law as true, however. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

In the alternative to dismissal, Defendant moves under Federal Rule of Civil Procedure 12(f) to strike certain allegations in Plaintiff's complaint. Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts generally disfavor motions to strike, however, and strike challenged allegations only if they are "so unrelated to the present claim as to be void of merit and unworthy of consideration." *Kies v. City of Aurora*, 149 F. Supp. 2d 421, 427 (N.D. Ill. 2001); *see also Talbot v. Robert Mathews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (courts should strike matter only if it "bears no possible relation to the controversy or may cause the objecting party prejudice").

## III.  DISCUSSION & ANALYSIS

Defendant moves to dismiss all three of Plaintiff's claims for failure to state a claim; moves to strike certain aspects of Plaintiff's claims based upon the applicable statute of limitations; and moves to strike certain aspects of Plaintiff's Title VII retaliation claim for failure to exhaust. The Court considers the parties' arguments below.

A.     **Plaintiff's Equal Pay Act Claim (Count I)**

1.     **Motion to Dismiss for Failure to State a Claim**

Viscosity moves to dismiss count I, arguing that Plaintiff has failed to state an Equal Pay Act claim. [34] at 11. The Equal Pay Act is broadly remedial and should be construed and applied to fulfill its underlying purposes: to remedy pay disparity arising from traditional concepts of gender. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 208 (1974). To establish a prima facie case under the Equal Pay Act, Plaintiff must demonstrate that she received a lower wage than an employee of the opposite sex in the same establishment but performed substantially equal work (in terms of skill, effort, and responsibility), under similar working conditions. *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017) (citing *Corning Glass,* 417 U.S. at 195).

Under the Act, "substantially equal work" does not equal identical work. *Epstein v. Secretary, U.S. Dep't of the Treasury*, 739 F.2d 274, 277 (7th Cir. 1984). "[D]ifferences in skill, effort, or responsibility" do not justify a finding that two jobs are unequal "where the greater skill, effort, or responsibility is required of the lower paid sex." *Lauderdale*, 876 F.3d at 907–08 (quoting 29 C.F.R. § 1620.14(a)). Job titles are not relevant to the analysis. *Epstein,* 739 F.2d at 277. Rather, assessing "equal work" requires evaluating whether the jobs in question share a "common core of tasks" or whether "a significant portion of the two jobs is identical." *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). In assessing equal work, "responsibility is concerned with the degree of accountability required in the

7

performance of the job, with emphasis on the importance of the job obligation," and "effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R. §§ 1620.17(a), 1620.16(a).

To survive Defendant's motion to dismiss, Plaintiff must allege a sex-based wage disparity between substantially equal work within the same company. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008). She does: Plaintiff alleges that, as a female, she received a lower salary than Duda, a male, in the same establishment. [29] at ¶¶ 35, 36. The success of Viscosity's motion turns on whether Plaintiff alleges that her role demonstrated substantially equal work as compared to Duda's role. On that point, Viscosity argues that Plaintiff fails to allege that her experiences and skills were the same as Duda's.[2] [34] at 11–12. But the Equal Pay Act does not require a plaintiff to show that individuals shared the exact same experiences and skills. Rather, liability under the Act turns on whether the two roles required equal work in terms of skill, effort, and responsibility. *Stopka*, 141 F.3d at 685.

Plaintiff claims she performed substantially equal work as compared to Duda's position in terms of skill, effort, and responsibility. [29] at ¶ 35. In fact, Plaintiff claims that, in addition to her own work, she performed Duda's work prior to and during his employment for less pay. *Id.* at ¶¶ 10, 12, 15, 17, 19, 23, 31. Plaintiff further alleges that the two positions shared the same level of responsibility for

---

[2] Defendant argues that plaintiff "conveniently glides over the fact that Duda, her supposed male counterpart, was hired *at a different as her.*" [34] p. 12. Different *what*? Defendant does not say, and the record otherwise fails to define the missing term.

business operations, "reported to the same supervisor, and had no direct reports themselves." [29] at ¶ 34. In short, she states a plausible Equal Pay Act claim. *See Lauderdale*, 876 F.3d at 907–08 (determining that a subordinate established her prima facie case under the Equal Pay Act by alleging she performed her supervisor's work in addition to her own).

In support of its motion to dismiss, Defendant argues that any differential in pay stemmed from differences in Plaintiff's and Duda's years of experience in financial analytics, as well as in their levels of education. *See* [34] at 12. Where a plaintiff shows a wage differential between two substantially equal jobs, the burden "shifts to the employer to show by a preponderance of the evidence that the wage differential is due to one of the exceptions, or affirmative defenses, enumerated in the second part of the EPA." *Corning Glass*, 417 U.S. at 196–97. And, to be sure, the Act offers four affirmative defenses to pay disparity: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1). But Defendant misplaces reliance upon an affirmative defense at this stage in the case. A Rule 12(b)(6) motion addresses whether a plaintiff has met the pleading standard in her allegations, not whether she has sufficiently alleged facts in anticipation of affirmative defenses. *Brownmark Films LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) ("[d]ismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)"); *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*,

*Inc.*, 697 F.3d 544 (7th Cir. 2012) ("plaintiffs have no duty to anticipate affirmative defenses"). This Court will not grant Defendant's Rule 12(b)(6) motion to dismiss based upon the purported merits of an affirmative defense. Because Plaintiff has otherwise satisfied the pleading requirements, the Court denies Defendant's motion to dismiss count I.

### 2. Motion to Strike Based on Statute of Limitations

In the alternative to outright dismissal for failure to state a claim, Defendant seeks to strike paragraphs 10 through 14 and 17, which describe conduct that occurred in the first quarter of 2016 ([29] at ¶¶ 10–12), late 2016 (*id.* at ¶¶13–14), and early 2017 (*id.* at ¶ 17). Defendant argues that the Equal Pay Act's two-year statute of limitations bars Plaintiff from obtaining relief based upon conduct that occurred prior to December 17, 2017, two years before she filed this lawsuit. [34] at 12. Not so.

Generally, individuals must file claims arising under the Equal Pay Act within two years of their accrual. 29 U.S.C. § 255(a); *Ameritech Benefit Plan Comm. v. Commun. Workers of Am.*, 220 F.3d 814, 824 (7th Cir. 2000). But in cases where the employer willfully violated the Equal Pay Act, the statute of limitations expands to three years. 29 U.S.C. § 255(a). An employer willfully violates the Equal Pay Act (a part of the Fair Labor Standards Act (FLSA)) if it either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (recognizing the three-year statute of limitations for willful violations under the FLSA).

Plaintiff alleges that Defendant willfully violated the Act. [29] at ¶ 38. And she alleges facts to support that assertion: she alleges that she did Duda's job before Defendant hired him; that she asked for Duda's job both before Defendant hired him and after he left; that she trained Duda and continued to do much of his work; that Defendant sabotaged her efforts to formally get the job but forced her to continue to do the actual work of the job; and that Defendant took steps to keep Plaintiff in the dark about the availability of the job and Duda's salary and benefits. *Id.* at ¶¶ 15–21. Indeed, Plaintiff alleges that Defendant asked Duda to keep things secret to avoid causing problems with Plaintiff. *Id.* at ¶ 26. These allegations plausibly suggest that Defendant knew it was violating the Equal Pay Act, ostensibly triggering the three-year statute of limitations. *See McLaughlin,* 486 U.S. at 133 ("willful" means "conduct that is not merely negligent" but is "voluntary," "deliberate," and "intentional"). Because Plaintiff filed this lawsuit December 17, 2019, she may recover for any Equal Pay Act violation involving a pay period within three years of that date (i.e., any violations occurring since December 17, 2016).

Additionally, acts outside the statutory time period may be offered "as background evidence in support of a timely claim." *West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005) (citing *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); *Davis v. Con–Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 n. 4 (7th Cir. 2004)). Because her claim stems from Duda's hire, which occurred in April of 2017, and because the allegations relating to earlier conduct may provide context for her claim, the Court declines to strike the challenged allegations;

11

none of the allegations are "so unrelated to the present claim as to be void of merit and unworthy of consideration." *Kies*, 149 F. Supp. 2d at 427.

### B. Plaintiff's Title VII Claims (Counts II and III)

#### 1. Defendant's Motion to Dismiss/Strike Based Upon Timeliness

Defendant also challenges the timeliness of certain aspects of Plaintiff's Title VII discrimination and retaliation claims (counts II and III). First, Defendant argues Plaintiff's claims are barred because her EEOC charge came too late. In Illinois, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). The Title VII limitations period begins when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). An unlawful employment practice occurs when an employer adopts a discriminatory decision or practice, when an individual suffers a "discriminatory compensation decision or other practice, or when an individual is affected by the application of a discriminatory compensation decision or other practice." 42 U.S.C. § 2000e-5(e)(3). A new limitations period triggers each time an individual receives a paycheck reflecting wage disparity. *Id.; see AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002) (noting that in the Title VII context each "discrete discriminatory act starts a new clock for filing charges alleging that act").

Plaintiff filed her charge on December 6, 2018, claiming that Defendant discriminated against her on the basis of sex under Title VII when, among other alleged acts, it paid her less than her male counterpart. [29] ¶¶ 44–45; [29-1]. The

300-day look back period thus includes the latter part of February and all of March, April, May, June, July, August, September, October, and November, as well as the first week of December. Plaintiff alleges that Defendant gave her a 1% raise in March of 2018, [29] at ¶ 21; this discrete act occurred within the 300-day look back period, *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618, 621 (2007). And she may sue on every paycheck she received during this period that reflects the discriminatory decision to pay her less than her male counterpart. *Groesch v. City of Springfield*, 635 F.3d 1020, 1024–25 (7th Cir. 2011).

Additionally, although the initial decision to pay Duda more than Plaintiff ostensibly would have been made when Defendant hired Duda in April 2017 (outside the 300-day lookback period), Plaintiff's allegations suggest that she may be able to take advantage of equitable tolling to bring this decision—and the paychecks from April 2017 through February 2018 that reflect the discriminatory decision—within the limitations period, because Plaintiff alleges that she did not learn about the pay disparity until early August of 2018, when Duda told her how much he made for doing the same job she did. [29] at ¶ 24. *See Morgan*, 536 U.S. at 121 ("the filing period is not a jurisdictional prerequisite to filing a Title VII suit"; rather, "it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)). Plaintiff's allegations also suggest that the continuing violation doctrine may apply, as she may ultimately show a causal nexus between Defendant's decision to give her a 1% raise and its decision to bar her from the Senior Financial Analyst job and to pay her less than her

13

male counterpart from the time he was hired. *E.g., Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 752 (7th Cir. 2002) (the continuing violation doctrine allows a Title VII plaintiff to obtain relief for a time-barred discriminatory act by linking it with a discriminatory act occurring within the limitations period). Accordingly, the Court denies Defendant's motion to dismiss counts II and III based upon the timing of her EEOC charge.

Moreover, as discussed above, Plaintiff may also be able to use the prior acts as background evidence in support of a timely claim. *Morgan*, 536 U.S. at 113; *West*, 405 F.3d. at 581. Plaintiff supports her sex discrimination claim with allegations about a range of conduct. Plaintiff alleges that in late 2016 Defendant denied her request for promotion to the vacant position she was already performing, that Defendant strung her along until it hired Duda, and that Defendant denied her the promotion (both before and after Duda) because of her sex. [29] at ¶¶ 10–23. Upon Duda's hire in April 2017, Plaintiff alleges she suffered gender discrimination in the form of pay disparity. *Id.* at ¶ 44. Plaintiff learned of this disparity in August 2018, when Duda told her his salary. *Id.* at ¶ 27. Plaintiff alleges that Defendant again avoided the topic of promotion upon Duda's notice of resignation. *Id.* at ¶¶ 29, 30. In short, Plaintiff alleges discrete acts that are sufficiently related to, if not a continuation of, the alleged actions outside of the statutory period in support of her sex discrimination claim. Even if her allegations ultimately are not all actionable, at a minimum, they provide context for her claim. Accordingly, the Court declines to strike any allegations based upon timeliness. *See West*, 405 F.3d at 581 (although

acts outside the statutory time period may not give rise to liability, they may still support a timely claim).

### 2. Defendant's Motion to Dismiss Count II for Failure to State a Claim

Defendant next challenges the sufficiency of Plaintiff's allegations in support of her Title VII discrimination claim. To survive a Rule 12(b)(6) motion, a complaint alleging sex discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). A complaint "merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* (citing *Tamayo*, 526 F.3d at 1085 for the proposition that a plaintiff sufficiently pleads a violation of Title VII by alleging salary discrepancy and that "she ha[d] been subjected to adverse employment actions by Defendants on account of her gender")).

Defendant argues that Plaintiff's discrimination claim fails because she does not claim she suffered a termination, via constructive discharge or otherwise. But Plaintiff does allege constructive discharge: she alleges that Defendant required her to do the jobs of two people and work incredibly long hours under stressful deadlines without adequate compensation, an accurate job title, or any possibility of promotion or additional salary, [29] at ¶¶ 46–49; and she also alleges that she suffered sex discrimination in the form of unequal pay and a failure to promote, *id.* at ¶¶ 44, 45, 48–50. Unequal pay is another adverse employment action, and an unlawful

15

employment practice under the Fair Pay Act within Title VII. 42 U.S.C. § 2000e-5(e); *Poullard v. McDonald*, 826 F.3d 844, 854 (7th Cir. 2016).

Relatedly, Defendant argues that Plaintiff fails to adequately plead constructive discharge. In so doing, Defendant relies upon *Gilhooly v. UBS Securities, LLC*, 772 F. Supp. 2d 914 (N.D. Ill. 2011), and several other cases addressing constructive discharge at the summary judgment stage. [34] at 4–5; *see Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044 (7th Cir. 2000); *Taylor v. Western and S. Life Ins.*, 966 F.2d 1188 (7th Cir. 1992); *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873 (7th Cir. 1999). But this Court considers constructive discharge today at the pleading stage under far more lenient standards.

The Court finds *Carlson v. CSX Transportation, Inc.*, 758 F. 3d 819 (7th Cir. 2014) instructive. In *Carlson*, the district court determined that the plaintiff's allegations about her work environment—specifically, that her employer treated her so poorly that she dropped out of a manager training program—failed to state a Title VII claim under a constructive demotion theory and dismissed the claim on the defendant's Rule 12(b)(6) motion. *Id.* at 829–30. The Seventh Circuit reversed, finding that the court erred in dismissing the plaintiff's claim at the pleading stage. The court held: "A work environment, it is true, must be 'intolerable' to support a constructive discharge. The conditions Carlson described in her complaint may not ultimately qualify as intolerable, but we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.* at 830.

16

As in *Carlson*, Plaintiff here alleges specific acts of mistreatment that support her constructive discharge claim. Plaintiff alleges that Defendant required her to perform the work of her supervisor, for an extended period, under a wage disparity and stressful conditions. Plaintiff also alleges that Defendant refused to consider her for the Senior position, both before it hired Duda and after Duda resigned; that it refused to consider her for a job she competently performed but strung her along so that she would continue to perform the job; and that it took steps to hide and thwart any opportunities for advancement, intentionally concealing Duda's resignation and the position vacancies from her and trying to hide the fact that Duda earned more than her. [29] at ¶¶ 43–48. She alleges that the long hours and the stress caused by having to perform two jobs under these circumstances amounted to a constructive discharge. She has alleged, in other words, that she was so mistreated that a "reasonable person in that position would be forced to quit." *Jordan v. City of Gary*, 396 F.3d 825, 836 (7th Cir. 2005). As in *Carlson*, although the environment and circumstances she describes may not ultimately support her constructive discharge claim, the Court cannot say at this stage that her claim necessarily fails. Accordingly, the Court will not dismiss count II.

### 3. Motion to Dismiss/Strike Count III

Defendant next challenges Plaintiff's Title VII retaliation claim (count III). Defendant first moves to strike paragraphs 22, 23, 56, and 60 of Plaintiff's complaint because Plaintiff failed to include them in her EEOC charge, raising them for the first time in her complaint here.

17

Generally, a plaintiff must restrict allegations in her complaint to claims included in her EEOC charge. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This affords the employer notice of the employee's grievances and provides the employer and the EEOC with an opportunity to settle the dispute through administrative processes. *Id.* The Seventh Circuit, however, reviews the scope of an EEOC charge liberally. *Farrell v. Butler Univ.,* 421 F.3d 609, 616 (7th Cir. 2005). Because laypersons draft most EEOC charges, "a Title VII plaintiff need not include in her charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 832 (7th Cir. 2015) (citing *Cheek,* 31 F.3d at 500). Rather, a Title VII claim must be "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek*, 31 F.3d at 500; *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). A plaintiff's complaint and the EEOC charge allegations are "not alike or reasonably related unless there is a factual relationship between them." *Cheek*, 31 F.3d at 501. The EEOC charge and the complaint must, "at a minimum, describe the same conduct and implicate the same individuals." *Huri*, 804 F.3d at 832.

Defendant argues that Plaintiff failed to allege retaliation in her EEOC charge and thus cannot assert that claim here. The Court agrees that Plaintiff did not describe any retaliation in her EEOC charge. Although she described sex discrimination and unequal pay, she did not mention Human Resources or Tatiana Villefort and said nothing about complaining to anyone about discriminatory

treatment or pay. *See* [29-1]. As a result, the retaliation claim she asserts here is not alike or reasonably related to the EEOC charge. *See, e.g., Chaidez v. Ford Motor*, 937 F.3d 998, 1004–05 (7th Cir. 2019) (charge that mentions the unemployment office but does not allege misconduct on the part of that office is not reasonably related to a federal claim alleging that the unemployment office committed misconduct); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another" unless they are essentially too "related and intertwined in time, people, and substance" to refuse).

Plaintiff did check the retaliation box on the charge form, [29-1], but that is not enough. *See Moore v. Vital Prods*, 641 F.3d 253 (7th Cir. 2011) (finding that, despite the checked boxes, the claims asserted in plaintiff's EEOC charge were not alike or reasonably related to the claims asserted in the federal complaint); *Cheek*, 31 F.3d at 501 (whatever boxes a claimant checks on an EEOC charge, claims are not alike or reasonably related unless there is a factual relationship between them— meaning, the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals).

Plaintiff's failure to discuss retaliation or protected activity in her EEOC charge bars her from alleging that she met with and reported her discrimination issue to Villefort in support of her retaliation claim. *See Cheek*, 31 F.3d at 502 (rejecting Plaintiff's claims of conduct giving rise to a claim of sex discrimination where Plaintiff

failed to identify in her charge the type of conduct and the identity of the individual involved); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111–12 (7th Cir. 1992) (rejecting a claim of racial harassment because Plaintiff's EEOC charge asserted termination due to racial discrimination but did not allege details related to harassment and stating that "it is not unreasonable to require some additional specificity or detail as a condition precedent for permitting her to assert her claim"). And, without these allegations, her retaliation claim fails.

To survive a 12(b)(6) motion to dismiss in a Title VII retaliation claim, the plaintiff must allege that she engaged in protected activity and suffered an adverse employment action because of that activity. *Huri*, 804 F.3d at 833. "Protected activity" includes "participating in a Title VII proceeding or opposing a practice made unlawful by Title VII." *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (citing 42 U.S.C. § 2000e-3(a)). In the context of retaliation, an "adverse employment action" refers to an action that would "dissuade a reasonable worker from participating in protected activity." *Huri*, 804 F.3d at 833. Absent an allegation that Plaintiff complained to Defendant or to Human Resources about the sex discrimination, Plaintiff's retaliation claim fails because she has alleged no other protected activity—and thus necessarily fails to allege a causal connection between any protected activity and any adverse action. Accordingly, the Court dismisses Plaintiff's retaliation claim, both because she failed to include it in her EEOC charge and because Plaintiff's exhausted allegations fail to allege any protected activity.

## V. CONCLUSION

For the reasons explained above, this Court grants in part and denies in part Defendant's motion to dismiss [33]. The Court denies Defendant's motion to dismiss counts I and II and denies Defendant's motion to strike certain allegations based upon the applicable statutes of limitations, but grants Defendant's motion to strike paragraphs 22, 23, 56, and 60 of Plaintiff's amended complaint and grants Defendant's motion to dismiss count III.

Dated: September 23, 2021

Entered:

John Robert Blakey
United States District Judge