## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KANWAL NADEEM,            )
                                   )
            Plaintiff,      )      Case No. 19-cv-08253
                                   )
        v.               )
                                   )
VISCOSITY OIL COMPANY,    )      Judge John Robert Blakey
                                   )
            Defendant.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff sues her former employer, Viscosity Oil Company for willfully violating the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (count I) and for sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (count II).[1] Defendant moves for summary judgment. [67]. For the reasons explained below, this Court denies Defendant's motion.

---

[1] Plaintiff's Amended Complaint [29] also asserted a Title VII retaliation claim (count III), but this Court dismissed that claim, *see* [50].

## I.     Factual Background[2]

On December 22, 2014, Viscosity hired Plaintiff—a female—to work as a Financial Analyst.  [69] ¶ 4.  When she was hired, Plaintiff had three and a half years of work experience and had recently earned her master's degree in business administration (MBA).  *Id.* ¶ 5.  Plaintiff was not a certified Public Accountant (CPA). *Id.* ¶ 9.  Before working at Viscosity, Plaintiff had been earning $45,000 per year without a bonus.  *Id.*  At Viscosity, Plaintiff was offered a starting salary of $53,000 per year, plus bonuses and benefits.  *Id.* ¶ 7.  According to Defendant, Plaintiff began employment at the E1A level, based upon her education, credentials, qualifications, and prior employment.  *Id.* ¶ 6.

As a Financial Analyst, Plaintiff's duties included preparing and analyzing financial reports, performing financial forecasting and budgeting, and preparing tax returns and related schedules.  *Id.*  ¶ 8.  Throughout her tenure at Viscosity, Plaintiff had just one job description, which Viscosity created in May 2014.  [83] at 13, ¶ 27. The Financial Analyst position required a bachelor's degree in accounting and three to five years' experience in a "financial role."  *Id.* at 14, ¶ 32.

---

[2] The following facts come from Defendant's LR 56.1(a)(2) statement of material facts, [69], and Plaintiff's response to Defendant's statement of material facts and statement of additional facts [83]. Defendant did not respond to Plaintiff's LR 56.1(b)(3) statement of additional facts.  Therefore, those facts not contradicted by Defendant's LR 56.1(a)(2) statement are deemed admitted.  *See Cossio v. Tourtelot*, No. 15-cv-7746, 2019 WL 4749917, *3–4 (N.D. Ill. 2019) (citing L.R. 56.1) (noting "all material facts set forth in the *non-moving* party's statement of additional facts will be deemed admitted 'unless controverted by the statement of the moving party'") (emphasis in original); *see also Greer v. Bd. of Educ. Of the City of Chi., Ill.,* 267 F.3d 727, 727 (7th Cir. 2001) ("Employment discrimination cases are extremely fact-sensitive, and neither appellate courts nor district courts are obliged in the adversary system to scour the record looking for factual disputes.").

Defendant's Human Resources Director, Marie Gurrola, represents that all Viscosity employees follow a structured, transparent promotional ladder, which is posted on the company's internal website. [69] ¶ 3. But according to Plaintiff, a transparent promotion ladder did not exist during Plaintiff's employment. [83] at 2, ¶ 3. Plaintiff testified that Viscosity employees did not reference job titles or job duties by any of the employment level codes (i.e., E1A, E1B) that Defendant describes. *Id.* at 9, ¶ 4. Instead, when Viscosity employees discussed promotions or advancement within the company, they only used job titles as descriptors. *Id.* Relevant correspondence in the record corroborates Plaintiff's representation. *Id.* at 13–14, ¶ 29. For example, Plaintiff's job offer letter does not reference her position by an employment level code. *Id.*

During her first annual review in early 2016, Plaintiff asked her supervisor, Luis Jimenez, to promote her to "Senior Financial Analyst." *Id.* at 8, ¶ 2. Jimenez promised Plaintiff the promotion and told her he was "working on it." *Id.* Later that year, in December 2016, Plaintiff informed Jimenez that she was interested in applying to a Senior Financial Analyst position that she had seen posted on LinkedIn. *Id.* at 8, ¶ 3. Jimenez again assured Plaintiff that he was working on getting her the promotion, but that the LinkedIn posting was made in error. *Id.* The posting did not contain any employment level code, such as "E1B." *Id.* at 8, ¶ 1. Shortly after, the company removed the post from LinkedIn. *Id.* at 8, ¶ 3. Defendant claims it removed the post for "reasons unrelated" to Plaintiff. [69] ¶ 4.

3

On April 18, 2017, Viscosity promoted Plaintiff to "Financial Analyst E1B." [83] at 9, ¶ 7. Although the position carried an increased salary, Plaintiff claims this was not a "real promotion" because her job responsibilities did not change; she did not report to anyone new; did not have the opportunity to delegate tasks to more junior financial analysts; and did not receive an updated job description, despite asking Jimenez for one. *Id.*

A week or two later, Viscosity hired (using the services of the recruiting company, Robert Half) Roman Duda—a male—as a temporary Financial Analyst. *Id.* at 10, ¶ 9. Like Plaintiff, Duda reported to Jimenez. *Id.* Plaintiff trained Duda on Viscosity's systems and began sharing the workload with him. *Id.* at 10, ¶ 10. During this time, Plaintiff and Duda worked well together and performed similar duties. *Id.* at 10, ¶ 11.

In July 2017, Viscosity hired Duda to fill the Senior Finance and Control Analyst position Jimenez had discussed with Plaintiff. *Id.* at 10, ¶ 12. But Duda's email signature, skype signature, and other corporate representations reflected the Financial Analyst title. *Id.*

The job description for Duda's position required "a bachelor's degree in business administration and/or management, engineering, information technology, finance, accounting, or a related field, and six years of "relevant exempt level experience in accounting, finance, legal, auditing, project management, governance, or other related business area." *Id.* at 14, ¶ 31. Duda joined Viscosity with an MBA, 12 years of experience as a Financial Analyst at BP Products of North America, and

4

three years of experience as a Senior Accountant at OAG Worldwide. [69] ¶ 13. Duda was also a Certified Public Accountant. *Id.* When Viscosity hired Duda, Plaintiff, in comparison, had only seven years of applicable experience in accounting. [83] at 14, ¶ 33. Although Plaintiff was not a CPA, she did hold an MBA. [69] at 5, 9.

Throughout his employment at Viscosity, Duda was absent from work due to illness or personal time during the last week of nearly every month. [83] at 10, ¶ 13. During some months, Duda was absent for more than one week at a time. *Id.* In Duda's absence, Jimenez tasked Plaintiff with Duda's job responsibilities, in addition to her own. *Id.* at 10, ¶ 14. To manage both of their responsibilities, Plaintiff often worked late nights and weekends. *Id.* Plaintiff's workload was particularly heavy because it often included month-end financial reports, since Duda was often absent at the end of the month. *Id.* Viscosity does not directly deny these facts; but Jimenez testified that Duda had more responsibilities than Nadeem and the two were "not performing equal work." *Id.* ¶ 19.

For over a year, Plaintiff performed all of the duties that were listed in Duda's job description that were not, in fact, the responsibilities of Jimenez or Bellusci. *Id.* at 11, ¶ 15. This included extensive financial work with Viscosity operations in Mexico, Canada, Brazil, and Malaysia, working with Jimenez on various financial department initiatives, working with the marketing department on budgets and forecasting, performing month-end duties, issuing checks to vendors, creating scorecards and forecasts, and others. *Id.* at 11, ¶ 16. During this period, Viscosity

continued to add work to Plaintiff's plate without paying her any additional salary. [69] ¶ 24.

By the summer of 2018, Plaintiff was becoming burned out from the burden of performing Duda's responsibilities in addition to her own. [83] at 11, ¶ 17. Plaintiff had followed up on her promotion requests at her annual reviews in 2017 and 2018, to no avail. *Id.* Growing frustrated, Plaintiff told Sharon Bellusci, who was then-Financial Controller, that if another job opportunity arose before Viscosity promoted her, she would leave the company. *Id.* ¶ 18. Plaintiff previously had similar conversations with Bellusci in 2016, 2017, 2018 about her frustration with her workload, low wages, and that Viscosity remained slow to promote deserving women. *Id.* In response, Bellusci suggested that Plaintiff speak with Tatiana Villefort, the Human Resources manager for Viscosity's parent company, Petronus Lubricants International. *Id.* at 11–12, ¶ 19. Plaintiff followed Bellusci's advice and spoke with Villefort about her frustrations, sharing her personal observation that Viscosity remained a "hard place" for a woman to advance. *Id.*

The apparent last straw for Plaintiff came in late August 2018 during a conversation with Duda in the staff kitchen. *See id.* at 12, ¶ 20. Plaintiff testified that the two discussed frustrations they were experiencing as employees at Viscosity. *Id.* Plaintiff told Duda she was frustrated because it had been over two years since Jimenez first told her she would receive the Senior Financial Analyst promotion, and she still had not. *Id.* Plaintiff also told Duda she believed she was being severely underpaid. *Id.* Duda responded sympathetically to Plaintiff and confessed that his

6

salary was $89,000 per year, $35,000 more than Nadeem's. *Id.* at 12, ¶ 21. According to Plaintiff, Duda also disclosed that he had been hired as a *Senior* Financial Analyst, not as a Financial Analyst, but that Jimenez would not let Duda use "Senior" in his title because Jimenez believed it would cause problems with Plaintiff. *Id.* at 12, ¶ 22. Plaintiff testified that she was "stunned" by Duda's revelations. *Id.* at 12, ¶ 21. Viscosity denies that Jimenez ever told Duda that he could not use the "Senior" descriptor and denies flagging any issues with Plaintiff about their respective roles and titles. [69] ¶ 21.

After her conversation with Duda, Plaintiff immediately reported what she had learned to Bellusci. [83] at 12–13, ¶ 23. Plaintiff and Bellusci then conferred with Jeff Hoch, Viscosity's CEO, and ultimately, Plaintiff told Hoch she had no choice but to resign. *Id.* After using up her vacation days as her notice period, Plaintiff resigned from Viscosity on September 7, 2018. [83] at 7, ¶ 24–25.

## II.    Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must

construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Discussion[3]

### A. Title VII Claims

Defendant argues that summary judgment should be granted as to Plaintiff's Title VII claim because: (1) Plaintiff was not similarly situated to Duda, her alleged comparator; and (2) Plaintiff has failed to meet her burden of providing evidence of discriminatory intent.[4]

---

[3] This Court addresses Plaintiff's claims in the order they are addressed by Defendant's summary judgment motion. *See* [68].

[4] Defendant's opening memorandum only addresses Plaintiff's wage discrimination claim under Title VII. [68] at 1. Plaintiff concedes in her memorandum opposing summary judgment that she does not have a claim for wage discrimination under Title VII. [82] at 6. Rather, Plaintiff contends that she has a Title VII failure to promote claim, [82] at 6, which she alleged in her Complaint. Thus, Defendant specifically challenges Plaintiff's Title VII failure to promote claim only in its Reply. *See* [86].

Under Title VII, an employer may not fail to promote an individual because of that person's sex. 42 U.S.C. § 2000e-2(a)(1). In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the Seventh Circuit clarified the methods of proof in employment discrimination cases. *Id.* The court explicitly instructed district courts to consider the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

The holistic analysis set forth in *Ortiz* supplements, rather than alters, the burden-shifting framework for discrimination claims that the Supreme Court created in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 793 (1973). *See David v. Bd. Of Trs. Of Cmty.* Coll. Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017) (discussing *Ortiz*'s impact on methods of proof in employment discrimination cases). The question on summary judgment remains, "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Id.* (citing *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)).

Courts now conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms," but also assess the plaintiff's evidence "cumulatively" under *Ortiz*. *See David*, 846 F.3d at 224. Here, Plaintiff organizes her argument utilizing the *McDonnell Douglas* framework. Accordingly, the Court will first assess the evidence by applying the *McDonnell Douglas* framework to determine whether Plaintiff has established a prima facie case of discrimination. Then, it will review the

record holistically, asking whether it permits a reasonable factfinder to conclude that Viscosity failed to promote Plaintiff because of her sex. *See Ortiz*, 834 F.3d at 765.

**(1)         McDonnell Douglas Analysis**

**(a) Prima Facie Case**

To demonstrate a *prima facie* case for failure to promote under Title VII, Plaintiff must produce evidence showing that: "(1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected group who was similarly or less qualified," *Kinney v. St. Mary's Health*, 76 F.4th 635, 646 (7th Cir. 2023) (citing *Logan v. City of Chicago,* 4 F.4th 529, 537 (7th Cir. 2021)), or was "not better qualified" for the position, *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate (not to prove) a legitimate, nondiscriminatory reason for the promotion decision." *Kinney*, 76 F.4th at 646. If the defendant meets that burden, then the burden shifts back to the plaintiff to offer evidence that the given explanation is pretextual, meaning "not merely wrong but false." *Id.* Pretext is "a lie, specifically a phony reason for some action." *Id.* (citing *Chatman v. Board of Educ. of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021)).

Defendant's only challenge to Plaintiff's prima facie case appears to be to prong four; namely, that Plaintiff was not similarly situated to her alleged comparator, Mr.

Duda. [86] at 2-3. It is undisputed that Duda, a male, is outside of Plaintiff's protected class, female.

To meet her burden on this prong for a failure to promote claim, Plaintiff must provide evidence from which a reasonable juror could conclude that she was similarly or better qualified for the position than her comparator, Duda. *See Kinney*, 76 F.4th at 646*; Riley*, 829 F.3d at 892. Defendant asserts that Plaintiff had only three and a half years of finance experience,[5] whereas Duda had over 20 years of experience in the petroleum finance industry, and Plaintiff was not a Certified Public Accountant, whereas Duda earned a CPA. [86] at 3. Defendant notes that Plaintiff claims to have performed "similar" or "complementary" tasks to Duda, thereby acknowledging that Duda had different responsibilities. *Id.* Therefore, Defendant argues, Duda is not comparable to Plaintiff "in all material respects" and her claim should fail on this basis. *Id.* The Court disagrees.

For purposes of a Title VII failure to promote claim, the material respects to which Duda and Plaintiff must be similarly situated are those qualifications required to perform the job; and here, Plaintiff has set forth sufficient evidence from which a reasonable jury could conclude that she was similarly situated to Duda as to the job's required qualifications.

---

[5] Plaintiff had three and a half years of experience in finance *when she was* hired in 2014. [69] ¶ 5. When Duda was hired, however, Plaintiff had seven years of finance experience. And this Court assesses Plaintiff's relative qualifications at the time of the alleged adverse employment action, *i.e.,* the promotion decision. *See e.g., Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689–91 (7th Cir. 2008) (assessing plaintiff's qualifications for position at the time of the adverse employment action). Plaintiff did not request to be promoted until 2016, and Duda was not permanently hired until July 2017.

For starters, the job description for the Senior Finance Accounting and Control Analyst position required a bachelor's degree in business administration and/or management, engineering, information technology, finance, accounting, or a related field, and six years of relevant exempt level experience in accounting, finance, legal, auditing, project management, governance, or other related business area. [83] at 14, ¶ 31. Plaintiff met these qualifications. When Viscosity hired Duda full-time in July 2017, Plaintiff had seven years of applicable experience in accounting, one year more than the number of years' experience required. *See id.* at 14, ¶ 33. Plaintiff also had an MBA, surpassing the education requirement. [69] ¶ 5. Although Duda had a CPA and over 20 years of experience in the petroleum finance industry, the relevant position did not require either of these qualifications. *See* [83] at 14, ¶ 31.

Furthermore, Plaintiff had something that Duda did not when he was hired to the position: three and a half years of Financial Analyst experience within Viscosity. Plaintiff's similar qualifications for the position are further evidenced by the fact that *she trained Duda* and she actually performed his job during his frequent absences and leaves. Indeed, the record indicates that Jimenez repeatedly promised Plaintiff the promotion to the position, even after Viscosity hired Duda for the job Plaintiff often performed in his absence. *Id.* at 10, ¶ 10; 11 ¶ 17.

Moreover, Defendant does not deny that Plaintiff performed at least *similar* job tasks to Duda. *See* [86] at 3. Instead, Defendant points to the fact that some of their tasks may have not been the same. *Id.* But slight divergence in responsibilities does not preclude a finding that Plaintiff was as qualified as Duda. Plaintiff need

only show that a jury could reasonably conclude, based upon the evidence, that Duda was similarly qualified for the position as she was. *Kinney*, 76 F.4th at 646. Plaintiff has met this burden.

### (b) Non-discriminatory Reasons and Pretext

Because Plaintiff has established a prima facie case of discrimination, the burden shifts to Defendant to articulate nondiscriminatory reasons for the promotion decision, and then shifts back to Plaintiff to establish pretext. *See Barnes v. Bd. Of Trs. Of the Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (citing *Riley*, 829 F.3d at 891–92).

Defendant argues that this Court should grant summary judgment on Plaintiff's Title VII claim because Defendant had a transparent promotional grading system that applied to all employees regardless of gender, and there is no evidence of discriminatory intent. [86] at 1–2. Plaintiff denies that any transparent promotional structure existed during her time at Viscosity. [83] at 2, ¶ 3.

To meet its burden, Defendant need only articulate, not prove, a legitimate, nondiscriminatory reasons for the promotion decision. *Kinney*, 76 F.4th at 646. On this score, Defendant asserts that Plaintiff received a promotion to the level of E1B but was "not eligible" for a position to Duda's level. [86] at 8. They do not explain why she lacked eligibility, however, and the record does not clarify the requirements to move from a position designated E1B to one designated E2A.

Even if Defendant had met its burden of offering a nondiscriminatory reason for promoting Duda over Plaintiff, the Plaintiff has also offered evidence of pretext.

Plaintiff testified that, beginning in 2016, Plaintiff requested, and Jimenez repeatedly promised her, the Senior Financial Analyst promotion. [83] at 8, ¶ 2–3, 11, ¶ 17. The parties agree that Plaintiff met the requisite qualifications listed in Viscosity's job description. *Id.* at 14, ¶ 31, 11, ¶ 17. When Plaintiff told Viscosity she had seen the position posted on LinkedIn and planned to apply for it, Viscosity took down the posting within a day. *Id.* at 8, ¶ 2. Then Viscosity filled the position with an outside hire—a male—who Plaintiff ultimately trained and repeatedly covered for. *See id.* at 10, ¶ 9–10. Subsequently, Duda confirmed that Jimenez knew he was misleading Plaintiff: he told Duda not to openly use the title "Senior," so that Plaintiff would not get upset that Duda got her promotion.[6] While Defendant denies Jimenez told Duda to keep his title and promotion from Plaintiff, the denial creates a material issue of fact and it will be up to a jury to decide who to believe. For now, Jimenez's purported coverup, and Viscosity's use of Plaintiff even after the company hired Duda, suffice to get Plaintiff to a jury on her claim that Viscosity unlawfully failed to promote her because of her sex and that the company's stated assessment of her relative qualifications constituted pretext.

## B. Ortiz Analysis

Under *Ortiz*, this Court must assess Plaintiff's evidence cumulatively and determine whether it would permit "a reasonable fact finder to conclude" that

---

[6] Defendant characterizes this evidence as "hearsay gossip." [86] at 7. There is no reason that Plaintiff cannot present this evidence in an admissible form at trial; therefore, she may use it to oppose summary judgment. *See Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014).

Defendant failed to promote Plaintiff because of her sex. *Ortiz*, 834 F.3d at 765. Viewing the record holistically, the answer is yes.

The same evidence that establishes pretext, discussed above, would enable a reasonable jury to conclude that Viscosity refused to promote Plaintiff to the Senior Financial Analyst position because of her sex. Plaintiff met all the qualifications contained in the job description for Duda's position; she trained Duda when he arrived at Viscosity as a temporary hire; and she performed his duties regularly while he was absent from work for illness and personal reasons. *See* [83] at 10–11. When Plaintiff expressed interest in applying to the posted opening on LinkedIn, the job posting was surreptitiously taken down within a day. *Id.* at 8, ¶ 3. After this exchange, rather than using LinkedIn again, Defendant used a recruiting company to find its next Senior Financial Analyst. *Id.* at 10, ¶ 9. Despite promising Plaintiff—a female—the promotion for over a year, Jimenez interviewed and hired someone else—a male. *Id.* at 10, ¶ 12. Thereafter, record evidence indicates that Jimenez tried to make Plaintiff think that Duda had not taken her job by telling Duda to hide his title, and Jimenez continued to promise Plaintiff the promotion while she filled in for Duda's frequent absences. *Id.* at 11–12, ¶¶ 17, 23; [83-1] ¶ 3. All of this evidence supports an inference of discrimination. As a result, the Court denies Defendant's motion for summary judgment as to Plaintiff's Title VII discrimination claim.

### B. Equal Pay Act

Defendant also seeks summary judgment on Plaintiff's Equal Pay Act claim. The Equal Pay Act forbids employers from paying different rates to men and women

15

for the same work at the same "establishment." 29 U.S.C. § 206(d)(1). The Act is broadly remedial and should be construed and applied to fulfill its underlying purposes: to remedy pay disparity arising from traditional concepts of gender. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 208 (1974). To establish a claim under the Equal Pay Act, Plaintiff must show: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx,* 813 F.3d 626, 632 (7th Cir. 2016) (quoting *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008)).

Defendant's only challenge to Plaintiff's Equal Pay Act claim is that Plaintiff cannot establish she was performing "equal work" to Duda. [86] at 8. To determine if the work that Plaintiff did was equal to the work that Duda did, "'the crucial inquiry is whether the jobs to be compared have a common core of tasks, *i.e.,* whether a significant portion of the two jobs is identical.'" *Jaburek*, 813 F.3d at 632 (quoting *Cullen v. Ind. Univ. Bd. Of Trustees*, 338 F.3d 693, 698 (7th Cir. 2008)). Liability under the Act turns on whether the two roles required equal work in terms of skill, effort, and responsibility. *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998).

In support of summary judgment, Defendant provides affidavits[7] from Viscosity employees Jimenez and Gurrola, who each opine that "Plaintiff and Duda"

---

[7] Plaintiff challenges the admissibility of these affidavits, arguing that these employees attest to facts without personal knowledge. [82] at 4–5. But Viscosity's HR director, Marie Gurrola, has sufficient personal knowledge to testify regarding information contained in employment records and company job descriptions. *See Parks v. Phillip Rock Ctr. & Sch.*, No. 18 C 1523, 2020 WL 1304751, at *3–4 (N.D.

were "not performing equal work." *See* [69-1], ¶ 14; [69-2] ¶ 6. Notably, Gurrola's testimony is based upon the "enumerated job descriptions for their respective positions," [69] ¶ 16; Gurrola did not begin working until just weeks before Plaintiff resigned. [83] at 13, ¶ 26. Jimenez likewise testified that Duda had more responsibilities "as enumerated in the job descriptions for each position." [69] ¶ 19.

But Plaintiff offers conflicting material evidence that is sufficient to defeat summary judgment at this stage of the proceedings. After reviewing Duda's job description references by both Gurrola and Jimenez, Plaintiff testified that she performed *all* of the duties listed therein that Duda actually performed. [83] at 11, ¶ 15. Plaintiff specified that she, in fact, performed job duties outlined in paragraphs 1–4, 8–9, 12–15, and 20–26 of the job description daily, before and after Viscosity hired Duda. [83-2] ¶ 4. The other tasks listed in Duda's job description, which Plaintiff did not perform, were not performed by Duda either; they were either performed by directors such as Jimenez or Sharon Bellusci in her role as Viscosity's Controller. [83] at 13, ¶ 28.

Furthermore, disputing Jimenez's testimony, Plaintiff testified that Jimenez assigned her Duda's job duties when Duda was out, and that she regularly performed his job as well as her job. *See id.* at 10, ¶ 14. Plaintiff also testified that, when she learned that Duda had, in fact, been promoted, she was "stunned" because she

---

Ill. Mar. 19, 2020). The Court thus overrules Plaintiff's objection to the admissibility of Ms. Gurrola's statements. Likewise, Plaintiff's personal knowledge objection to Mr. Jimenez's affidavit is without basis; Jimenez was Plaintiff's supervisor as well as Duda's, was a party to the alleged conversations with Plaintiff regarding a potential promotion and interviewed Mr. Duda. Therefore, the Court overrules this objection as well.

assumed, having worked alongside Duda every day and often done his job, that they had the same jobs. *Id.* at 12, ¶ 21. Based upon this evidence a jury could reasonably conclude that Plaintiff's and Duda's jobs involved equal work in terms of "skill, effort, and responsibility," in reality, if not on paper. *See Stopka*, 141 F.3d at 685.

The Court therefore declines to grant summary judgment in Defendant's favor on Plaintiff's Equal Pay Act claim.

## IV.    Conclusion

For the reasons explained above, this Court denies the Defendant's motion for summary judgment [67]. Plaintiff may proceed on her Equal Pay Act claim (count I) and her Title VII failure to promote claim (count II).


Date:  3/26/2024                                Entered:

                                                John Robert Blakey
                                                United States District Judge

18